IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| PACIFIC INDEMNITY COMPANY, | ) | |
| | ) | No. 3:16-CV-00227-MPB-WTL |
| Petitioner, | ) | |
| | ) | Assigned to: The Honorable Judge |
| v. | ) | William T. Lawrence |
| | ) | |
| MARY LINGO and MAX LINGO | ) | Referred to: The Honorable |
| | ) | Magistrate Judge Matthew |
| Respondent. | ) | Brookman |

**RESPONDENTS' RESPONSE TO PETITIONER'S NOMINATIONS FOR THIRD APPRAISER**

Pursuant to the Court's February 21, 2017 Order, Respondents, Max and MaryAnn Lingo, submit their response to the Petitioner's nominations. [Filing No. 22.]

## I. Introduction

The Policy, as defined in Paragraph 6 of the Petition to Compel Appraisal, does not provide any specific guidance as to who may serve as the Third Appraiser. [Filing No. 1 at 68.] Rather, it simply states that the appraiser shall be "competent" and "independent." [*Id*.]

A. Competency

The determination of competency should be akin to the determination of whether an individual is qualified as a testifying expert. *See* Fed. R. Evid. 702. Under Federal Rule of Evidence 702, a court deems a person qualified as an expert if he or she has the requisite "knowledge, skill, experience, training, or education" in the area(s) that he or she will provide testimony. Here, the Court should conduct a similar 'gatekeeper' function to determine whether each nominee is qualified to serve as the Third Appraiser by analyzing the specific purpose of

the Third Appraiser in this matter in concert with his knowledge, skill, experience, training, or education.

Here, as alleged by Petitioner, a malfunction of a humidifier "caus[ed] water damage to the Lingos' home [62 Oak Meadow Road, Evansville, Indiana (the "Property")] and personal property (the "Loss")." [Filing No. 1, ¶ 11.] Because the Parties do not agree on the amount of the Loss to the Proprety, the Third Appraiser's ultimate duty is to "set the amount of the loss" to the Property, which includes any damage to the landscaping and debris removal.[1]

As part of that ultimate duty, the Third Appraiser's first task will be to assess the damage to the Property that resulted from the humidifier malfunction. The Third Appraiser will need to personally inspect the Property and obtain and review all related documentation from Petitioner and Respondent, including all photographs of the damage and all prior reports and written statements by adjustors, inspectors, and contractors.[2] In doing so, he will need to take into account the Property itself (*i.e.*, 8,000+ square foot home that is covered by a $1,268,000 "Deluxe Coverage" homeowners' policy). [*See* Filing No. 1-1 at 21.] He will also need to have an understanding of how to discern water damage from other types of damage and from mere aging.

Second, once the extent of the damage is determined, the Third Appraiser will need to assess whether the damage can be repaired or must be replaced and what method(s) should be used to repair or replace the damage. As part of that task, he will need to draw on his knowledge, training, and experience in residential structure restoration and construction by taking into

[1] Conversely, the Third Appraiser is not tasked with reviewing the Policy to determine whether the damage from the humidifier was a covered "occurrence" or a determination of the amount of Loss to the personal property and contents in the Property.

[2] As the Third Appraiser may not be aware of the existence of certain documents, both parties should provide the related documentation to the Third Appraisal.

consideration all applicable factors (*e.g.,* labor, materials, and equipment available, the Property itself, type of damage).

Lastly, with an understanding of the damage and the repair or replacement method(s), the Third Appraiser must determine the amount of the Loss by estimating the cost to repair or replace the damage. As part of that task, he will need to be familiar with the cost of qualified labor, materials, and equipment in the Southern Indiana construction environment necessary to satisfactorily complete the work. That knowledge is especially important, as labor, materials, and equipment costs can often vary region to region and city to city, often barring a formulaic approach and necessitating knowledge of the specific area.

It is critical to that process that the Third Appraiser uses his independent knowledge, training, and experience in in the residential construction, repair, and restoration trades undertaking each of the foregoing tasks. It is not sufficient that the Third Appraiser merely accept the opinions of either Party's appraiser without an independent investigation and analysis, as he will be required to critically analyze each appraiser's opinion.

B. <u>Independence</u>

In addition to competency, the Third Appraiser must be "independent." *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 874-75 (7th Cir. 2000) (quoting *Atlas Construction Co. v. Indiana Insurance Co*., 160 Ind. App. 33, 309 N.E.2d 810 (Ind. Ct. App. 1974)) (a third, neutral appraiser in an insurance dispute "must act free from bias, partiality, or prejudice in favor of either of the parties.") To determine whether the nominee is "independent," it is important to look at a number of factors, including any connection the appraiser has to either party, any relationship the appraiser has with a particular industry, whether the appraiser is

typically hired by insurers or insureds, and whether the appraiser has any financial interest in providing an opinion that negatively impacts either party.

## II. Petitioner's Nominees

A. Scott Starr

Petitioner's first nominee to serve as the Third Appraiser has no training, education, knowledge, or experience in the general area of the building trade, let alone the specific areas of construction, restoration, assessing damage to dwellings, or valuing costs of repair or replacement for that damage. [Filing No. 23 at 3-6.] While in his submission to the Court he describes his applicable experience as "litigation and arbitration" involving "contract or litigation claims, pollution claims, construction defect claims, and a large number of casualty claims," his role in each of those matters was limited to 'attorney,' not expert. Despite his willingness to serve as the Third Appraiser and Respondent holding him out to be qualified, Mr. Starr holds himself out as a "trust and securities lawyer" who "focuses on litigating civil lawsuits, including class actions and various types of securities fraud." [Filing No. 25-1 (Website Bio of Scott L. Starr Bio.)] His education and training match that public display, as they are limited to the legal field and an accounting degree he received at Ball State University. [*Id.*]

In short, while there may be no question that Mr. Starr is a competent attorney, who – like most attorneys in Indiana – has advised and represented clients in a wide-array of matters, his lack of expertise in the areas of placing a value on the "Loss" in this matter makes him an ill-fit choice to serve as the Third Appraiser.

B. Trent Smith

Petitioner's second nominee to serve as the Third Appraiser is an Indianapolis estimator that has close ties to insurance companies.

Mr. Smith holds himself out as someone who began in the insurance claim world ("learned the trade from State Farm" as a "claim representative" and "re-inspector" and has since "worked with/for every insurance company servicing the Greater Indianapolis market," including working as a "direct vendor" to an insurance company. [Filing No. 23 at 7.] He advertises that his "Ideal Referral Partner" is "Insurance Agents & Property Loss Insurance Adjusters." [Filing No. 25-2 (Profile of Trent Smith).] His "Work Experience" inexplicably leaves out other entities, under which he has or currently performs work, including E3G, LLC and E3G Innovation Group, LLC, which have now assumed the name E3G Restoration & Remodeling, LLC. [*See* Filing No. 23 at 8; Filing No. 25-3 (Indiana SOS listings for E3G, LLC and E3G Innovation Group, LLC).] Further, it is unclear if he has a relationship with Petitioner, as he simply states that "neither I nor our office has ever represented Chubb Insurance Company."[3] [Filing No. 23 at 7.] However, such does not explain if he has ever worked with or for Chubb Insurance Company or its affiliates, including Petitioner (*i.e.*, Pacific Indemnity Company).[4] For the foregoing reasons, Mr. Smith is not "disinterested," as his business depends on good relationships with insurance carriers.

Regarding his competency, there is no evidence that Mr. Smith has any experience or training in performing work in the building or construction trades or that he is or has ever been licensed to perform any such work. Rather, he "learned the trade from State Farm" as a "claim representative" and "re-inspector" and has "always been an estimator of projects and leader of sales while on the general contracting side." [Filing No. 23 at 7-8.] As any contractor would testify, an individual's competency in performing construction or restoration work can greatly

[3] Chubb Insurance Company and other Chubb entities are affiliated entities of Petitioner.
[4] For example, taking at his word, such means that he never performed work for Chubb Insurance Company or its affiliates in his 11 years at Fentress Builders, Inc.

affect that individual's competency to accurately and sufficiently assess damage and place a value on the repair or restoration of such. With no evidence that he can actually perform the work, it is hard to see how Mr. Smith should be chosen as the Third Appraiser.

Additionally, there is no evidence that Mr. Smith has worked in or has any knowledge of the construction, restoration, or estimating trades in Southern Indiana. Accordingly, he will have little knowledge of the labor, material, and equipment costs to perform any necessary repair or replacement work. Such knowledge is vital to competently serve as the Third Appraiser in this matter.

C. Steve Weber

Petitioner's second nominee to serve as the Third Appraiser is a civil/structural engineer who has a long history of serving insurance companies and other corporations.

Merriam-Webster defines a "civil engineer" as "an engineer whose training or occupation is in the design and construction especially of public works (as roads or harbors)." https://www.merriam-webster.com/dictionary/civil%20engineer. Likewise, a "structural engineer" is "an engineer whose training or occupation is in the design and construction especially of public works (as roads or harbors)." https://www.merriam-webster.com/dictionary/civil%20engineer. To that end, Mr. Weber's experience is primarily in the design phase of commercial, industrial, and governmental facilities, including "commercial steel buildings, concrete foundation designs, river transfer facilities, and support facilities for mining operations," "soil stabilization and analysis," and "traffic accident reconstruction." [Filing No. 23 at 10.] None of which are applicable to the task of the Third Appraiser in this matter. Similarly, his education and professional associations are not related to the residential construction and restoration trades, but as a civil/structural engineer who assesses structural

design issues. In short, there is no specific evidence that Mr. Weber has any training or experience in the building, restoration, or construction of residential homes. Further, akin to Petitioner's other nominees, there is no evidence that Mr. Weber has worked in or has any knowledge of the construction, restoration, or estimating trades in Southern Indiana.

Mr. Weber also has multiple connections to Petitioner and strong ties to the insurance industry. Specifically, for Petitioner, Mr. Weber concedes he has performed at least three jobs for Petitioner. [Filing No. 23 at 9.] Also, his history of employment has been for companies that are routinely (and almost exclusively) hired by insurance carriers as experts. [Filing No. 23 at 10.] First, Rimkus Consulting Group, Inc. ("Rimkus") holds itself out as "a worldwide provider of forensic consulting services to insurance companies, law firms, corporations and government agencies." [Filing No. 25-4 (Rimkus Release).] Rimkus routinely underwrites and speaks at seminars for insurance carriers and their counsel on coverage and claim disputes "to help meet the needs of risk managers, attorneys, and claims professionals." [*See e.g.*, Filing No. 25-5 (2012 DRI – Voice of Defense Bar – Insurance Coverage and Claims Institute, pp. 1-2, 4) (promoting the opportunity for attendees ability to "[n]etwork with senior claims executives and the top insurance coverage lawyers" and learn the "most recent policyholders' counsel's trends and tricks.")); Filing No. 25-7 (Excerpt of Brochure for 2013 DRI Annual Meeting); Filing No. 25-7 (Excerpt of Brochure for 2016 DRI Annual Meeting); Filing No. 25-8 (Rimkus 2014 Speaking Engagements); Filing No. 25-9 (Rimkus 2015 Speaking Engagements).]

In addition, numerous reported cases show that Rimkus has been hired by Petitioner to serve as an expert in a dispute over an insurance loss.[5] *See Commonwealth v. Feierstein*, No. 1241-2012, 2015 Pa. Dist. & Cnty. Dec. LEXIS 466 (Pa. C.P. June 12, 2015)(hired as expert by

---

[5] Petitioner, Pacific Indemnity Company, is a subsidiary or an affiliated entity of Chubb Corporation.

Chubb Indemnity Insurance Co.); *Eckstein v. Cincinnati Ins. Co.*, 469 F. Supp. 2d 455 (W.D. Ky. 2007)(hired by Cincinnati Insurance Company, a subsidiary of the Chubb Corporation). Rimkus is also routinely hired by other insurance carriers, not insureds.[6] *See Lizotte v. Praxair, Inc.*, 640 F. Supp. 2d 1335 (W.D. Wash. 2009)(retained by Travelers Insurance); *Smith v. Rimkus Consulting Grp., Inc.*, No. 1:06cv515-LTS-RHW, 2006 U.S. Dist. LEXIS 70691 (S.D. Miss. Sep. 12, 2006) (Rimkus hired by Meritplan Insurance Company and accused of fraudulently altering reports to favor an insurance company); *Stephens v. Rimkus Consulting Grp., Inc.*, 546 F. Supp. 2d 329 (E.D. La. 2008)(class action matter that accursed Rimkus of fraudulently altering reports to favor an insurance company); *Markwest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, Civil Action No. 05-cv-01948-PSF-PAC, 2007 U.S. Dist. LEXIS 27243 (D. Colo. Apr. 12, 2007) (Rimkus hired by outside claims adjuster to investigate the pipeline explosion); *State Auto. Mut. Ins. Co. v. Dunhill Partners, Inc.*, No. 3:12-cv-03770-P, 2014 U.S. Dist. LEXIS 187914 (N.D. Tex. Aug. 28, 2014)(hired by State Automobile Mutual Insurance Company); *Jugan v. Econ. Premier Assur. Co.*, No. 15-4272, 2016 U.S. Dist. LEXIS 87876 (E.D. Pa. July 6, 2016) (hired by MetLife).

To the same extent, Mr. Weber's former employer, Donan Engineering Co., Inc. ("Donan") also has an extended relationship with Petitioner and its affiliated entities (*i.e.*, the Chubb group). Donan claims that "[m]any of the projects [it] work[s] are imitated by insurance companies as part of the claims process for their policy holders." [Filing No. 25-10 (Donan – 'Who We Are').] That is well-documented in cases reported showing Donan represents Petitioner and its affiliates. *See e.g., Barrister Farm, LLC v. Upson Downs Farm, Inc.*, No. 2004-CA-002651-MR, 2006 Ky. App. Unpub. LEXIS 802 (Ct. App. Feb. 10, 2006) (hired by Chubb

[6] The undersigned counsel reviewed 40 cases out of the more than 250 cases, in which Rimkus was involved as an expert, and found no case in which Rimkus was hired by an insured.

Group of Insurance Companies); *Eckstein v. Cincinnati Ins. Co*., 469 F. Supp. 2d 444 (W.D. Ky. 2007) (hired by Great Northern Insurance Company, a subsidiary of Chubb Corporation); *Warrick Cty. v. Hill*, 973 N.E.2d 1138 (Ind. Ct. App. 2012) (hired by Cincinnati Insurance, a subsidiary of Chubb).

A search of Indiana state legal authority shows that Donan is consistently hired by other insurance companies, as well, including with other entities who are experts in this matter.[7] *See Carter v. State Farm Fire & Cas. Co.*, 850 F. Supp. 2d 946 (S.D. Ind. 2012)(hired by State Farm, along with Donan and Keeler Webb and William Norman); *see e.g., Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins. Co.*, 779 N.E.2d 21 (Ind. Ct. App. 2002) (hired by Indiana Farmers Mutual Insurance Co.); *Allen v. State*, 925 N.E.2d 469 (Ind. Ct. App. 2010) (hired by State Farm Insurance); *McGuire v. Century Sur. Co.*, 861 N.E.2d 357 (Ind. Ct. App. 2007) (hired by Century Surety Company); *Leo Mach. & Tool, Inc. v. Gerardot*, No. 02A03-1006-PL-365, 2011 Ind. App. Unpub. LEXIS 218 (Ct. App. Feb. 22, 2011) (hired by Westfield Insurance Companies). Lastly, a broader search across the United States reveals at least 78 reported cases in which Donan was hired as an expert by an insurance carrier, not the insured.

## III. Conclusion

For the foregoing reasons, Lingos object to Petitioner's nominations and request the Court select the Third Appraiser from Respondents' nominees.

Respectfully submitted,

*s/ Clifford R. Whitehead*
Clifford R. Whitehead, #28836-49

[7] Petitioner relies on a report from Keeler Webb and William Norman, as part of its determination of the Loss in this matter.

Jeffrey W. Henning, #17352-53
ZIEMER STAYMAN WEITZEL & SHOULDERS, LLP
20 N. W. First Street
P. O. Box 916
Evansville, IN 47706
Tel. No. (812) 424-7575
Fax No. (812) 421-5089
E-mail: cwhitehead@zsws.com

Attorneys for Respondents

**CERTIFICATE OF SERVICE**

I certify that on the 15th day of March, 2017, a copy this document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Clifford R. Whitehead*
Clifford R. Whitehead